```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

CAPITOL INSURANCE COMPANY      :
                               :
            Plaintiff,         :    CIVIL ACTION
                               :
       v.                      :    NO. 10-CV-1195
                               :
CHARLES DVORAK, et al.,        :
                               :
            Defendants.        :

**MEMORANDUM AND ORDER**

**Joyner, J.**                                **October 26, 2010**

Before this Court is the Motion to Dismiss of Defendant Daniel Samela, CPA, PC (Doc. No. 11), Plaintiff's response in opposition thereto (Doc. No. 29), and Defendant's reply (Doc. No. 39). For the reasons set forth in this Memorandum, the Court grants Defendant's Motion.

## I. BACKGROUND

Plaintiff Capitol Insurance Co. has sued a host of individuals and corporations, including Daniel Samela, CPA, PC, for alleged losses arising from a reinsurance agreement Plaintiff entered into with Aldrostar, SA. It appears that Plaintiff is asserting claims of fraud, negligent misrepresentation, and professional negligence against Samela (and that claims of RICO violation, conspiracy to violate RICO, and breach of contract are limited to other Defendants). Problematically, Plaintiff in its Complaint and responsive brief repeatedly conflates the alleged actions of Samela with those of other Defendants-three

corporations and four officers/employees of the corporations–by using the ambiguous term "Defendants," despite the fact that Samela is an independent accounting firm that never had contact with Plaintiff.[1]

Samela provides three grounds for dismissing it from this suit: (1) lack of personal jurisdiction, (2) improper venue, and (3) failure to state a claim upon which relief can be granted.[2]

## II. STANDARD OF REVIEW

It is well-established that, "once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). While "courts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff," id. at 142 n.1, "the plaintiff must sustain its burden . . . through sworn affidavits or other competent evidence." Patterson v. FBI, 893 F.2d 595, 604 (3d Cir. 1990) (internal quotation marks omitted). "[A]t no point may a plaintiff rely on the bare

---

[1] For purposes of the pending Motion to Dismiss, however, it is irrelevant which of the claims are in fact being asserted against Samela, because this Court finds that Samela never had sufficient "minimum contacts" with Pennsylvania and never "expressly aimed" its conduct at Pennsylvania, such that this Court lacks personal jurisdiction as to any of them.

[2] Because this Court finds that Plaintiff has not proven personal jurisdiction over Samela, it need not reach the issues of improper venue and failure to state a claim.

pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." Id. (internal quotation marks omitted).

### III. DISCUSSION

"Rule 4(e) of the Federal Rules of Civil Procedure is the starting point [of a personal jurisdiction analysis]. This rule authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998) (internal quotation marks omitted). Pennsylvania's long-arm statute "permits Pennsylvania courts to exercise personal jurisdiction over nonresident defendants 'to the constitutional limits of the Due Process Clause of the Fourteenth Amendment.'" Id. (citation omitted). "A district court's exercise of personal jurisdiction pursuant to Pennsylvania's long-arm statute is therefore valid as long as it is constitutional." Id.

Plaintiff fails to address the constitutional test, instead focusing on the statutory grant of jurisdiction pursuant to 42 Pa. Cons. Stat. § 5322. Clearly, however, a court "cannot presume that jurisdiction is proper simply because the requirements of a long-arm statute have been met." Id. at 202.

Under the traditional constitutional test, "[s]pecific jurisdiction exists when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." Id. at

201 (internal quotation marks omitted). "First, a court must determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have 'reasonably anticipated being haled into court there.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "A finding of minimum contacts demands the demonstration of 'some act by which the defendant purposely availed itself of the privilege of conducting business within the forum State, thus invoking the protection and benefits of its laws.'" Id. at 203 (first citation omitted) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). If "minimum contacts have been established, a court may [then] inquire whether 'the assertion of personal jurisdiction would comport with 'fair play and substantial justice.''" Id. at 201 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)). That is, "even if a defendant has the requisite minimum contacts with the forum state, other factors may militate against exercising jurisdiction." Id. at 205.

When an out-of-state defendant has been accused of an intentional tort, however, the analysis is slightly different, as the Third Circuit uses the Calder "effects test." To establish jurisdiction in this way, the Third Circuit has held that

> the plaintiff must allege facts sufficient to meet a three-prong test. First, the defendant must have committed an intentional tort. Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort. Third, the defendant must have expressly aimed his tortious

>conduct at the forum, such that the forum can be said
>to be the focal point of the tortious activity.

IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 256 (3d Cir. 1998). Additionally, the Third Circuit has warned that "[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement." Id. at 265. "In the typical case, [satisfaction of the test] will require some type of 'entry' into the forum state by the defendant." Id. Thus, "[j]ust as the standard test prevents a defendant from 'be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts,' the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state." Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007) (citation omitted).

Regardless of the test, specific jurisdiction is generally evaluated on a "claim-by-claim basis," id. at 296, and "the due process standard must be applied to each defendant" separately. Carteret, 954 F.2d at 145 n.6.

Plaintiff has entirely failed to submit any affidavits or other evidence to establish personal jurisdiction over Samela. Although Plaintiff submitted an "Affidavit of Counsel in Support of Plaintiff's Opposition to Defendants, Charles and Doreen Dovrak's [sic] Revised Motion to Dismiss" (Doc. No. 41) and an

"Affidavit of Counsel in Support of Plaintiff's Opposition to Defendants, Richard and Alison Dovrak's [sic] Revised Motion to Dismiss" [hereinafter "Pl. Aff."] with several exhibits (Doc. No. 42), it inexplicably submitted only a brief in response to Samela's Motion to Dismiss.[3]  Even considering (a) the facts alleged in response to the other motions as evidence of jurisdiction over Samela and (b) the facts alleged in the Complaint in the light most favorable to Plaintiff, however, this Court finds that Plaintiff has not met its burden.

Plaintiff never alleges a single contact between Samela and Pennsylvania or express aiming by Samela at Pennsylvania.  The only references to Pennsylvania in the Affidavit are statements that "Plaintiff . . . is an insurance company authorized to transact business only in the Commonwealth of Pennsylvania" (Pl. Aff. para. 3); "Capitol Insurance's only place of business is located at 1120 Welsh Road, North Wales, Pennsylvania" (id.); "[t]he Dvorak Defendants transacted business in the Commonwealth of Pennsylvania throughout the entire period of time from 2002-2007" (id. para. 10); and "Richard Dvorak . . . made an appearance and presentation to the Pennsylvania Department of Insurance in Harrisburg, Pennsylvania" (id. para. 11.).[4]

---

[3] Plaintiff attempts to present additional evidence in its responsive brief.  This is clearly inappropriate.  Such facts must be presented through affidavits, exhibits, or other evidence for this Court to consider them.

[4] Plaintiff's evidence concerning the audit, the basis of suit against Samela, is simply the following:  "In early 2002, Capitol Insurance advised Richard Dvorak that Capitol Insurance required an independent audit report of Aldrostar, SA before Capitol Insurance would enter into a reinsurance agreement with Aldrostar, SA, a foreign corporation."  (Pl. Aff. para. 7.)

Moreover, Samela, a small New York corporation, submitted an affidavit asserting that,

> [w]ith respect to the State of Pennsylvania and the Eastern District, neither Samela nor any of its personnel were ever licensed to do business; Samela has never maintained offices or any other type of facility; has never engaged in business or a profession; and has never had any other physical presence or contact.

(Aff. in Supp. of Mot. to Dismiss, Doc. No. 11-1, para. 2.) It further asserted that its "only connection to this matter is that it audited the December 31, 2001 financial statements of Aldrostar, S.A."; that "neither Samela nor any of its employees ever had any meetings, discussions, correspondence or other contacts of any kind with Plaintiff or Plaintiff's personnel"; and that "neither Samela nor any of its employees even knew of the existence of or any plans by Aldrostar S.A. to do business with Plaintiff." (Id.) Plaintiff presents no evidence refuting these statements.

Accordingly, this Court concludes that Samela neither

---

"On or about April 5, 2002, Richard Dvorak sent Capitol Insurance an independent Auditor's report prepared by Defendant, Daniel Samela, CPA, P.C." (Id. para. 8.) "During the period of time from 2002 through 2007, Capitol Insurance was under the impression based on statements and representation from all defendants that . . . Aldrostar SA was a valid reinsurance company." (Id. para. 9.) Plaintiff thus "made substantial commission payments . . . intended for the reinsurance company, Aldrostar, SA." (Id. para. 12.) "Pursuant to the above referenced reinsurance agreement, Aldrostar SA was required to fund a Funds withheld account, which it never funded." (Id. para. 13.) Subsequently, "Plaintiff discovered that the above referenced Dvorak Defendants used the Capitol commission payments for their personal benefit" and that "[t]he funds were disbursed to all defendants in this action, including payments to Daniel Samela." (Id. paras. 14-15.) Additionally, "Capitol Insurance discovered . . . that Aldrostar, SA is not registered as a reinsurance company in Uruguay as represented by all defendants in this action." (Id. para. 17.) In sum, "Capitol Insurance discovered that all of the representation, including the Samela Auditor's Report, were either a fraudulent scheme or negligent misrepresentations that induced plaintiff to make the monthly commissions payments to the Dvorak Defendants, with no intent of producing reinsurance service for Capitol Insurance." (Id. para. 18.)

"purposely availed itself of the privilege of conducting business within" Pennsylvania nor "expressly aimed [its] [allegedly] tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." See, e.g., IMO Indus., 155 F.3d at 259 n.3 (finding that allegations that the defendant "'certainly knew' that its correspondence [sent to another state] would both be transmitted to [the plaintiff] in [the forum state] and cause injury to [the plaintiff] there" were "insufficient to demonstrate, even at a minimal level, that [the defendant] has purposefully directed its activities toward the forum or has purposefully availed itself of the privilege of conducting its activities within the forum").

## IV. CONCLUSION

Because Plaintiff has failed to establish either minimum contacts between Samela and Pennsylvania or express aiming by Samela at Pennsylvania, the Motion is granted and Samela is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).