```
                    UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CAPITOL INSURANCE COMPANY        :
                                 :
              Plaintiff,          :    CIVIL ACTION
                                 :
         v.                       :    NO. 10-CV-1195
                                 :
CHARLES DVORAK, et al.,           :
                                 :
              Defendants.         :
```

**MEMORANDUM AND ORDER**

**Joyner, J.**                                    **October 26, 2010**

Before this Court are the Revised Motions to Dismiss of Defendants Alison Dvorak (Doc. No. 34) and Richard Dvorak (Doc. No. 37) and Plaintiff's response in opposition thereto (Docs. Nos. 42, 43). For the reasons set forth in this Memorandum, the Court grants the Motions.

## I. BACKGROUND

Plaintiff Capitol Insurance Co. has sued a host of individuals and corporations, including Richard and Alison Dvorak, for alleged losses arising from a reinsurance agreement Plaintiff entered into with Aldrostar, S.A. The Defendants include Rampage Marketing Services, Inc., and Newport Resources Management, Inc., two corporations that allegedly represented themselves as the licensed U.S. agent for Aldrostar, S.A.; Aldrostar, Inc., the alleged successor corporation to Aldrostar, S.A.; Charles Dvorak, Doreen Dvorak, Richard Dvorak, and Alison Dvorak, who allegedly represented themselves as officers,

shareholders, employees, agents, or servants of the corporate Defendants; and Daniel Samela, CPA, PC, an independent accounting firm that audited Aldrostar, S.A.  Plaintiff has asserted claims of fraud, negligent misrepresentation, RICO violation, conspiracy to violate RICO, breach of contract, and professional negligence.

Problematically, Plaintiff's Complaint and responsive brief speak in very broad language (even though more specific pertinent facts should already be known to Plaintiff), repeatedly conflate the alleged actions of the many Defendants (e.g., by using the ambiguous term "Defendants," even though the information to separate the actions should again be in Plaintiff's possession), and seemingly change which causes of action Plaintiff is bringing.  It best appears that Plaintiff is suing Alison and Richard Dvorak on all claims except professional negligence.[1]

Alison and Richard Dvorak have filed identical pro se Revised Motions to Dismiss, providing four grounds for dismissing them from this suit:  (1) lack of subject matter jurisdiction, (2) lack of personal jurisdiction, (3) improper venue, and (4) failure to state a claim upon which relief can be granted.[2]

---

[1] For purposes of the pending Revised Motions to Dismiss, however, it is irrelevant which of the claims are in fact being asserted against Alison and Richard Dvorak, because this Court finds that Plaintiff has failed to prove personal jurisdiction for any of them.

[2] Defendants appear to misconstrue the nature of subject matter jurisdiction, basing their subject matter jurisdiction challenge on the ground that they are "individual[s] with no ownership . . . control, responsibility or obligation" as to Aldrostar, S.A., and that they are without "any interests in any company involved in this case."  (Rev. Mot. to Dismiss of Alison Dvorak, para. 1.; Rev. Mot. to Dismiss of Richard Dvorak, para. 1.)  This

2

## II. STANDARD OF REVIEW

It is well-established that, "once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). While "courts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff," id. at 142 n.1, "the plaintiff must sustain its burden . . . through sworn affidavits or other competent evidence." Patterson v. FBI, 893 F.2d 595, 604 (3d Cir. 1990) (internal quotation marks omitted). "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." Id. (internal quotation marks omitted).

## III. DISCUSSION

---

Court liberally construes pro se Defendants' argument as either a "corporate shield" challenge to personal jurisdiction or a Rule 12(b)(6) challenge for failure to state a claim upon which relief can be granted, and addresses this argument infra.
 This Court has subject matter jurisdiction pursuant to both 28 U.S.C. § 1331 (federal question jurisdiction, as Plaintiff has asserted a violation of a federal statute, 18 U.S.C. § 1962) and 28 U.S.C. § 1332 (diversity jurisdiction, as no Defendant is a citizen of the same State as Plaintiff and the amount in controversy exceeds $75,000).
 Because this Court concludes that Plaintiff has failed to prove personal jurisdiction, see infra, it need not address the issues of venue or failure to state a claim.

3

"Rule 4(e) of the Federal Rules of Civil Procedure is the starting point [of a personal jurisdiction analysis]. This rule authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998) (internal quotation marks omitted). Pennsylvania's long-arm statute "permits Pennsylvania courts to exercise personal jurisdiction over nonresident defendants 'to the constitutional limits of the Due Process Clause of the Fourteenth Amendment.'" Id. (citation omitted). "A district court's exercise of personal jurisdiction pursuant to Pennsylvania's long-arm statute is therefore valid as long as it is constitutional." Id.

Plaintiff fails to address the constitutional test, instead focusing on the statutory grant of jurisdiction pursuant to 42 Pa. Cons. Stat. § 5322. Clearly, however, a court "cannot presume that jurisdiction is proper simply because the requirements of a long-arm statute have been met." Id. at 202.

The constitutional test may be satisfied through the existence of general or specific jurisdiction. "General jurisdiction is based upon the defendant's 'continuous and systematic contacts' with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities." Remick v. Manfredy, 238 F.2d 248, 255 (3d

4

Cir. 2001). "Specific jurisdiction exists when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." Pennzoil, 149 F.3d at 201 (internal quotation marks omitted).

Under the traditional test for specific jurisdiction, "a court must determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have 'reasonably anticipated being haled into court there.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "A finding of minimum contacts demands the demonstration of 'some act by which the defendant purposely availed itself of the privilege of conducting business within the forum State, thus invoking the protection and benefits of its laws.'" Id. at 203 (first citation omitted) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). If "minimum contacts have been established, a court may [then] inquire whether 'the assertion of personal jurisdiction would comport with 'fair play and substantial justice.''" Id. at 201 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)). That is, "even if a defendant has the requisite minimum contacts with the forum state, other factors may militate against exercising jurisdiction." Id. at 205.

When an out-of-state defendant has been accused of an intentional tort, however, the specific jurisdiction analysis is

slightly different, as the Third Circuit uses the Calder "effects test." To establish jurisdiction in this way,

> the plaintiff must allege facts sufficient to meet a three-prong test. First, the defendant must have committed an intentional tort. Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort. Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 256 (3d Cir. 1998). Additionally, the Third Circuit has warned that "[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement." Id. at 265. "In the typical case, [satisfaction of the test] will require some type of 'entry' into the forum state by the defendant." Id. Thus, "[j]ust as the standard test prevents a defendant from 'be[ing] haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts,' the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state." Marten v. Godwin, 499 F.3d 290, 297 (3d Cir. 2007) (citation omitted).

Regardless of the test, specific jurisdiction is generally evaluated on a "claim-by-claim basis," id. at 296, and "the due

6

process standard must be applied to each defendant" separately. Carteret, 954 F.2d at 145 n.6. This separation is especially important in the present case, where there are numerous Defendants and Plaintiff has sued the individual Defendants not in their individual capacity but in their capacity as agents of the corporate Defendants. This is because, "[g]enerally, individuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts." Elbeco Inc. v. Estrella de Plato, Corp., 989 F. Supp. 669, 675 (E.D. Pa. 1997) (internal quotation marks omitted).[3]

Plaintiff has submitted an "Affidavit of Counsel in Support of Plaintiff's Opposition to Defendants, Richard and Alison Dovrak's [sic] Revised Motion to Dismiss" [hereinafter "Pl. Aff."] with several exhibits (Doc. No. 42). Defendants Richard and Alison Dvorak have each submitted an affidavit. Though

---

[3] "The courts have carved out two exceptions to the 'corporate shield' doctrine, refusing to allow a corporate officer to invoke its protections where the officer was involved in tortious conduct for which he or she could be held personally liable, or when a corporate officer 'has been charged with violating a statutory scheme that provides for personal, as well as corporate, liability.'" Johnson v. Phelps, No. 05-5555, 2007 U.S. Dist. LEXIS 24212, *11 (E.D. Pa. Apr. 2, 2007) (citations omitted); see also Elbeco Inc. v. Estrella de Plato, Corp., 989 F. Supp. 669, 675 (E.D. Pa. 1997) ("[A] recognized exception to this general rule is that a corporate agent may be held personally liable for torts committed in their corporate capacity." (internal quotation marks omitted)).
  "In order to determine whether the corporate officer will be subject to personal jurisdiction, the following factors should be examined: 'the officer's role in the corporate structure, the quality of the officers'[] contacts, and the extent and nature of the officer's participation in the alleged tortious conduct.'" Elbeco, 989 F. Supp. at 675 (quoting Maleski v. DP Realty Trust, 653 A.2d 54, 63 (Pa. Commw. Ct. 1994)).

7

Plaintiff cannot rely on its pleadings because it bears the burden of proving jurisdiction through affidavits or other competent evidence, Plaintiff's affidavit avers only a small portion of the facts alleged in the Complaint (omitting, for example, any reference to the "alter ego" theory raised in the Complaint). Moreover, Plaintiff attempts to present additional facts in its responsive brief. This is clearly inappropriate. The facts must be presented through affidavits, exhibits, or other competent evidence for this Court to consider them. Considering the evidence properly submitted, this Court finds insufficient proof of personal jurisdiction over both Defendants.

### 1. Alison Dvorak

Plaintiff has fallen far short of proving that this Court has personal jurisdiction over Alison Dvorak. As an initial matter, Plaintiff fails to show why this Court should even consider any actions Alison Dvorak may have taken in her corporate capacity–that is, why the "corporate shield" does not apply. See, e.g., Schiller-Pfeiffer, Inc. v. Country Home Prods., Inc., No. 04-1444, 2004 U.S. Dist. LEXIS 24180, *15-27 (E.D. Pa. Dec. 1, 2004) (concluding that personal jurisdiction over two directors who played "major roles" in the corporation would be "problematic at best" when their only direct contact with Pennsylvania was their signature on an agreement sent to the plaintiff's Pennsylvania office); D&S Screen Fund II v. Ferrari,

174 F. Supp. 2d 343, 347-48 (E.D. Pa. 2001) (holding the corporate shield applicable when the contacts of the defendant company president with Pennsylvania consisted of several telephone calls and facsimile transmissions but his allegedly tortious activity did not appear to have occurred in Pennsylvania).

As for the relationship, if any, between Alison Dvorak and Pennsylvania, Plaintiff's affidavit only makes the bare assertion that "[t]he Dvorak Defendants transacted business in the Commonwealth of Pennsylvania throughout the entire period of time from 2002-2007 when they presented themselves as the registered agent for Aldrostar, SA." (Pl. Aff. para. 10.) There is no evidence that Alison Dvorak's alleged transaction of business in Pennsylvania was "continuous and systematic;" thus, general jurisdiction is nonexistent. Nor has Plaintiff supplied evidence to show how the claims at issue arose from any business Alison Dvorak transacted in Pennsylvania; thus, specific jurisdiction is not proven. See, e.g., Regan v. Loewenstein, 292 Fed. App'x 200, 205 n.3 (3d Cir. 2008) (affirming the finding of no personal jurisdiction when the plaintiffs "allege[d] that [one plaintiff] met with [the defendants] in Pennsylvania to discuss her book, but they [did] not provide any details" of the meeting).

2. Richard Dvorak

9

Plaintiff has also failed to prove that this Court has personal jurisdiction over Richard Dvorak. As with Alison Dvorak, Plaintiff does not address why this Court should even consider any actions Richard Dvorak may have taken in his corporate capacity. Unlike with Alison Dvorak, there is more specific evidence of a relationship with Pennsylvania than just the broad assertion that "[t]he Dvorak Defendants transacted business in the Commonwealth of Pennsylvania throughout the entire period of time from 2002-2007 when they presented themselves as the registered agent for Aldrostar, SA." (Pl. Aff. para. 10.) Richard Dvorak's affidavit acknowledges that,

> Representing Rampage Marketing Services for Aldrostar SA, I attended a meeting in Harrisburg, Pennsylvania with the Department of Insurance and Capitol Insurance Company on July 7, 2004 where I conveyed Aldrostar SA's opinion regarding unearned premium as a receivable that becomes earned when collected and other concerns related to the IBNR. I agreed to convey the information from the meeting to Aldrostar SA.

(Richard Dvorak Aff. at unnumbered pg. 2.) "This was after Capitol's auditors claimed there was a shortfall of $2,232,000.00 in the Funds Withheld Account as of 2004 for Unearned Premium 'UEP' and Incurred But Not Reported 'IBNR' funds." (Id.) See also Pl. Aff. para. 11 ("Richard Dvorak admits in his revised motion that he made an appearance and presentation to the Pennsylvania Department of Insurance in Harrisburg, Pennsylvania

10

regarding the reinsurance company's capacity to fulfill its obligation under the reinsurance agreement.").[4]

Plaintiff has woefully failed, however, to show whether or how this contact with Pennsylvania, rather than any actions outside the forum, gave rise to the claims of fraud, negligent misrepresentation, RICO violation, conspiracy to violate RICO, and breach of contract.  In fact, the only specific evidence of Richard Dvorak's participation in acts forming the basis of this suit is limited to other years and circumstances, such as his involvement with the auditor's report in 2002, (Pl. Aff. paras. 7, 8), well before his visit to Pennsylvania.  See Regan, 292 Fed. App'x 200 at 205 n.3.  Accordingly, this Court finds that Plaintiff has not met its burden of showing that its claims arise from Richard Dvorak's contact with Pennsylvania.

## IV. CONCLUSION

Because Plaintiff has failed to establish minimum contacts between Defendant Alison Dvorak and Pennsylvania or express aiming by Defendant Alison Dvorak at Pennsylvania, and because Plaintiff has failed to establish that the claims against

---

[4] Richard Dvorak refers to several other contacts between the corporations and Pennsylvania, but it is unclear whether he was personally involved.  See Richard Dvorak Aff. at unnumbered pg. 1 ("[R]einsurance contracts were approved by the Pennsylvania DOI and signed in June 2002."); id. at 2 ("Aldrostar SA's plan for funding the account through a letter of credit was approved by the [Pennsylvania] Department of Insurance ("DOI"). This was the second time the Department of Insurance approved Aldrostar SA and its contract (2005)."); see also id. (stating that Capitol Insurance controlled all accounts and calculated all commissions due to Aldrostar SA, but not clarifying where these accounts and commissions originated).

Defendant Richard Dvorak arise from any contact he had with Pennsylvania, the Motions are granted and Defendants are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).